**Heinz GROTZKE, et al., Plaintiffs**

v.

**Susan West KURZ, et al., Defendants.**

**Civ. A. No. 95–0246 P.**

United States District Court,
D. Rhode Island.

June 6, 1995.

---

**54**

Christopher H. Little, Providence, RI, for plaintiffs.

David S. Rosenthal, Boston, MA, and Thomas C. Angelone, Providence, RI, for defendants.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This is a breach of contract action seeking injunctive relief. Plaintiffs originally brought this action in state court and defendants removed it to this Court based upon diversity jurisdiction. Plaintiffs simultaneously seek a temporary restraining order and move this Court to remand the action to state court, contending that the amount in controversy does not exceed $50,000. This ruling resolves the threshold issue of jurisdiction only. For the following reasons, diversity jurisdiction lies with this Court and plaintiffs' motion to remand is therefore DENIED.

### I.

The basic underlying facts are largely undisputed. Prior to 1992, the Grotzkes established a corporation called Dr. Hauschka Cosmetics, Inc., which, by agreement, was the exclusive importer and distributor of natural cosmetics manufactured by Wala–Heilmittel GmbH in the United States. In 1992, the Grotzkes sold their business to the Kurz defendants. The Kurzes acquired the goodwill, the distribution network, and the physical inventory and assets of Dr. Hauschka Cosmetics for $800,000 and the inventory for $528,000. The parties executed a number of closing documents, each of which provided for payment by equal monthly installments. One of these documents is the "Employment Agreement," under which the new Dr. Hauschka Cosmetics is to pay the Grotzkes $9,500 for a term of 66 months. Another of the closing documents, entitled "Agreement" provides that in the event that the buyer defaults in any obligation under this Agreement, the seller shall have the right to a permanent injunction restraining the buyer from continuing to use the trade name and trademark of Dr. Hauschka or any of the copyrights and other similar intangible rights which relate to the importation and resale of products by the seller.

In the fall of 1994, the Kurzes initiated a correspondence between the parties that continued throughout the winter of 1995. The essence of the communication consisted of the Kurzes's proposal to renegotiate the terms of the contract and the Grotzkes's rejection of said proposal. In February of 1995, defendants informed plaintiffs that they would cease making the $9,500 monthly payments pursuant to the Employment Agreement. At the same time, defendants asserted a demand for arbitration. In fact, as of the time the complaint was filed, defendants failed to make three monthly payments under the Employment Agreement, totalling

$28,500. The defendants continue to operate Dr. Hauschka Cosmetics.

Plaintiffs brought this action in state court seeking a declaration that defendants are in violation of the closing documents and an injunction enjoining defendants from continuing to use the trade name and trademark of Dr. Hauschka or any of the copyrights and other similar intangible rights which relate to the importation and resale of products by defendants. Defendants removed the case to this Court and plaintiffs seek to remand it to state court.

Plaintiffs essentially contend that the amount in controversy does not exceed $50,000 and that this Court therefore lacks jurisdiction over the case. They argue that in an action for declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation—historically calculated by assessing the value to the *plaintiffs*. Plaintiffs reason that since defendants have failed to make monthly installments totalling $28,500, the value of the injunction to the plaintiffs, and thus the amount in controversy, is $28,500. Plaintiffs further emphasize that defendants should not be permitted to manipulate the amount in controversy in order to manufacture federal jurisdiction.

Defendants counter that the current trend in suits for injunctive or declaratory relief is to determine the amount in controversy from *either party's* viewpoint. Because an injunction would result in the closing of Dr.

Hauschka Cosmetics, a business worth well in excess of $50,000, the amount in controversy, from defendants' viewpoint, is readily satisfied. *See* Kurz Aff. ¶¶ 13–14. In the alternative, defendants argue that even from the plaintiffs' viewpoint, the amount in controversy exceeds the statutory requirement, because, in reality, plaintiffs have alleged a total breach of the Employment Agreement, which is in excess of $400,000.

II.

■ It is well-settled that in an action for injunctive or declaratory relief "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977). Where the value is in dispute, the party seeking to invoke federal jurisdiction bears the burden of alleging "facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Dep't of Recreation and Sports v. World Boxing Ass'n,* 942 F.2d 84, 88 (1st Cir.1991) (citations omitted). While the value of the object of the litigation has historically been assessed from the plaintiff's perspective, see *Ferris v. General Dynamics Corp.,* 645 F.Supp. 1354, 1362 (D.R.I.1986), defendants correctly note that a number of courts have favored the "either party" or "defendants'" viewpoint in cases involving injunctive relief.[1] Commentators have like-

---

1. Defendants cite the following cases in support of this proposition:

*Oklahoma Retail Grocers v. Wal–Mart Stores,* 605 F.2d 1155, 1159 (10th Cir.1979) ("[W]hen injunctive relief is sought the interests of either party may be looked to in determining the amount in controversy"); *Hartridge [Hatridge] v. Aetna Cas. & Sur. Co.,* 415 F.2d 809, 815 (8th Cir.1969) (same); *Hambell v. Alphagraphics Franchising, Inc.,* 779 F.Supp. 910, 912 (E.D.Mich.1991) (In cases involving purely equitable relief, "in determining whether the jurisdiction is met, courts may evaluate the amount in controversy taking into account the interests of both parties"); *Maloney v. Gesco Internat'l, Inc.,* 750 F.Supp. 959, 960 (N.D.Ill. 1990) ("The amount in controversy in an equitable action can be determined by reference to the pecuniary result to either party which the judgment would directly produce"); *Bedell v. H.R.C. Ltd.,* 522 F.Supp. 732, 735 (E.D.Ky.

1981) (viewing the amount in controversy from the point of view of the party seeking to invoke federal jurisdiction and "from the defendant's viewpoint in a case brought to the federal courts by removal").
Defs.' Mem. of Law in Opp. to Pls.' Mot. to Remand at 5–6. *See also McCarty v. Amoco Pipeline Co.,* 595 F.2d 389, 395 (7th Cir.1979); *Tatum v. Laird,* 444 F.2d 947, 951 (D.D.C.1971), *rev'd on other grounds,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).
In contrast, see *Miller–Bradford & Risberg, Inc. v. FMC Corp.,* 414 F.Supp. 1147, 1149 (E.D.Wisc.1976) (in an action seeking declaratory and injunctive relief, the value to the defendant of having the injunction requested denied cannot be used to establish the jurisdictional amount requirement) and *Cowan v. Windeyer,* 795 F.Supp. 535, 538 (N.D.N.Y.1992) (damages measured strictly from plaintiff's perspective, even in cases which have been removed by the defendant to federal court).

56

wise acknowledged the "clear trend" to sanction jurisdiction where the amount in controversy requirement is satisfied from the defendant's viewpoint. 1 James W. Moore, et al., *Moore's Federal Practice*, ¶ 0.91[1], at 820 (2d ed. 1995). *See also* 14A Charles A. Wright, et al., *Federal Practice and Procedure*, § 3703, at 66–68 (2d ed. 1985).

First Circuit case law provides a modicum of guidance in the determination of which types of cases call for the "defendant's viewpoint" approach. The most comprehensive discussion is found in *Ferris v. General Dynamics Corp.*, 645 F.Supp. 1354 (D.R.I.1986). The court did not adopt the "defendant's viewpoint" approach for that case because it involved a class action.[2] However, the court rejected the strict "plaintiff's viewpoint" approach where plaintiffs seek equitable relief instead of monetary damages in non-class action cases. *Ferris*, 645 F.Supp. at 1361–62. "There is no doubt that, in certain circumstances, it makes considerable sense to examine the amount in controversy from the defendant's viewpoint." *Ferris*, 645 F.Supp. at 1363. More recently, in *Hairston v. Home Loan and Inv. Bank*, 814 F.Supp. 180 (D.Mass 1993), although the court rejected the "defendant's viewpoint" approach for the purposes of the class action before it, the court was careful to do so "[w]ithout precluding the possibility of adopting the defendant's viewpoint" rule in an appropriate situation. *Hairston*, 814 F.Supp. at 182. The Court of Appeals has commented only briefly on the use of the "defendant's viewpoint" in cases where the plaintiff sought equitable relief. In *Williams v. Kleppe*, 539 F.2d 803, 805 n. 1 (1st Cir.1976) the court found jurisdiction based on the claimed interests of the plaintiffs, however, it noted that it could also rely on the alleged pecuniary burden on the defendants were plaintiffs to prevail to satisfy the amount in controversy requirement. More significantly, the Appellate Court noted

in dicta in *Commonwealth of Massachusetts v. United States Veterans Admin.*, 541 F.2d 119, 122 (1st Cir.1976) that the jurisdictional amount was satisfied "since the pecuniary burden on the [defendant] would probably be in excess of [the jurisdictional requirement] should the [plaintiff] prevail." (citing *Williams*, 539 F.2d at 805 n. 1).

### III.

Before me is a case in which plaintiffs, not part of a class action, seek equitable relief. Plaintiffs contend that the value of the object of the litigation is $28,500, as that is the sum of money owed to them at the initiation of this lawsuit and the basis for their request for equitable relief. Defendants contend that they will be forced out a business worth more than $50,000 should the plaintiffs prevail and an injunction issue. In a claim for money damages, "it makes no jurisdictional difference whose frame of reference is used to assess the dollars in controversy." *Ferris*, 645 F.Supp. at 1361. Here, however, the jurisdictional difference is significant depending on which of the litigants' perspective is considered.

It is true that application of the "defendant's viewpoint" is not without its drawbacks. As the court noted in *Ferris*, 645 F.Supp. at 1363 n. 8, to allow the "defendant's viewpoint" to satisfy jurisdictional requirements "would allow a plaintiff who concededly has no claim for the requisite minimum damages to dress his complaint in the garb of injunctive relief, assign to that craftily tailored wardrobe a value measured in terms of the defendant's compliance with the hypothetical restraining order, and litigate in the federal courts notwithstanding the puniness of his claim." In a similar vein, the "defendant's viewpoint" approach undermines the interest of a plaintiff in avoiding diversity jurisdiction if he/she chooses, running counter to the principle that the plaintiff is the author of his/her own lawsuit. It is

**2.** The court reasoned that "to look at the class action from the defendant's perspective ... would circumvent the well-established rule that the claims of class members cannot be aggregated for the purpose of meeting jurisdictional amount." *Hairston v. Home Loan and Inv. Bank*, 814 F.Supp. 180, 181 n. 2 (D.Mass 1993) (citing *Ferris*, 645 F.Supp. at 1363). *See generally Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22

L.Ed.2d 319 (1969); *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (no diversity jurisdiction where there is any member of the class whose separate and distinct claim does not satisfy the jurisdictional requisite). Thus, where the equitable relief is sought by a *class*, special considerations prevent the use of the "defendant's viewpoint" approach.

this latter concern that is at issue in the instant action. Nevertheless, at the same time, a "defendant's viewpoint" approach is consistent with "the purpose of [the] amount in controversy requirement [which] is to ensure the substantiality of the suit itself." 1 James W. Moore, et al., *Moore's Federal Practice*, ¶ 0.91[1] (2d ed. 1995) at 819. *See also Ronzio v. Denver & R.G.W.R. Co.*, 116 F.2d 604, 606 (10th Cir.1940) (courts should not exclude substantial cases by "an artificial rule of convenience"). Furthermore, the First Circuit, on a number of occasions, has opined in favor of the "defendants' viewpoint" approach in appropriate cases. As the *Ferris* court noted, "courts have typically looked at things from the plaintiff's standpoint.... A different approach must be taken when plaintiffs, as in this case, seek primarily equitable relief as opposed to money damages." *Ferris*, 645 F.Supp. at 1361.

This action is just such a case. Clearly it is not a situation, as with a class action, where application of the "defendant's viewpoint" approach would be in direct contravention with settled precedent. *See supra* note 2. It is a bipolar action seeking equitable relief. The pecuniary burden on the defendants would be well in excess of the amount in controversy requirement should the plaintiffs prevail. *See Commonwealth of Massachusetts*, 541 F.2d at 122. I see no reason not to apply the "defendants' viewpoint" approach to this action and uphold federal jurisdiction.

### IV.

For the foregoing reasons, I find that the amount in controversy requirement is satisfied. Diversity jurisdiction exists and the plaintiffs' motion to remand is therefore DE-NIED. As discussed at the chambers conference on May 12, 1995, a conference will be set to review with counsel the possibility of holding an evidentiary hearing. Counsel is instructed to contact Ms. Celeste–Anne Patnaude in the Clerk's Office to set a date for this conference.

SO ORDERED.